GARRISON WILSON v. L. C. JANES.

1. SUPREME COURT—*Case Not Dismissed.* Various irregularities occurring in the district court, and in making, settling, signing, filing and authenticating a case for the supreme court referred to, and *held,* not to be sufficient to authorize a dismissal of the case from the supreme court.

2. CASE-MADE, *Contents of.* A case-made for the supreme court may contain many of the proceedings had in the district court, which are never in any other manner made a part of the record of the case.

3. DECISION OF DISTRICT COURT, *Correctness of, When Presumed.* Where two principal questions are presented to the district court for its consideration, and an answer in the negative to either of which would require a decision in favor of the plaintiff, and the court answers one in the affirmative and the other in the negative, and renders judgment accordingly in favor of the plaintiff, and the defendant brings the case to the supreme court, *held,* that all presumptions are in favor of the correctness of the decision of the district court upon both questions — upon the one answered in the affirmative, as well as the one answered in the negative.

4. ROAD, *Not Unopened Within Meaning of Statute.* A public road was established by the board of county commissioners, in July, 1873, and this road is seventeen miles in length, passes through several road districts, and through unoccupied, uncultivated and uninclosed lands, and was afterward worked by the several road overseers, through whose districts the road is established; and the road is extensively traveled, and the route of travel is generally the same as the surveyed line. In some places, however, the traveled road deviates from the surveyed line, and it does so upon the plaintiff's land, from six to fifteen rods; it, however, touches the surveyed line on the plaintiff's land at several points. No portion of the plaintiff's land was cultivated or inclosed until 1877, or afterward. There is a certain pond on the plaintiff's land, where the traveled road deviates farthest from the surveyed line; but the road overseer in that district, in less than seven years, and probably in less than six years from the time when the road was established, worked on

the surveyed line where it passes through this pond. The road overseer of the district in which the plaintiff's land is situated, within less than seven years, and probably within less than six years after the road was established, opened the entire road through the plaintiff's land, except a distance of about forty rods, and failed to open the road that distance at the request of the plaintiff, who then, in 1879, had oats growing on his land, along the surveyed line for that distance. *Held*, That the road did not remain for seven years an "unopened" road, within the meaning of § 1, chapter 150 of the Laws of 1879, so as to vacate and annul that portion of the road which was established across the plaintiff's land.

## Error from Reno District Court.

This was an action, brought by *L. C. Janes* against *Garrison Wilson*, a road overseer in Haven township, Reno county, to perpetually enjoin the defendant from opening a certain supposed public road across the plaintiff's lands. The petition of the plaintiff reads as follows:

"The plaintiff complains of the defendant, G. Wilson, and alleges:

"1. That he is a resident of Haven township, Reno county, Kansas, and is the owner in fee of the lands hereinafter described, situated and being in Reno county, Kansas, viz.: The southeast quarter of section 15, and the northwest quarter of section 23, in township No. 24, R. 5 west; that said lands are under cultivation.

"2. That said defendant, G. Wilson, is a resident of said Haven township, and also road overseer of said township in which plaintiff's lands are situated.

"3. That said defendant, as such overseer, has given plaintiff notice that he intends, on the first day of January, 1881, to lay out and open a public highway over and through the said tracts or parcels of land belonging to said plaintiff; that he threatens to lay out and open said public highway at the time aforesaid, and of the width of 66 feet, commencing at the plaintiff's ( L. C. Janes's) southeast quarter of said section 15, running thence diagonally through said southeast quarter to the northwest corner of the northwest quarter of said section 23, running diagonally across and over said northwest quarter to the southeast corner thereof; that the said section 23 has a road all along and upon its four sides. Said section 18 has a public highway on and along its north, east, west, and south sides; that the laying out and opening of said proposed public highway, and the appropriation of said portion of said

land for the purposes of a highway, would work great and irreparable injury to plaintiff; that no highway now exists, or ever did exist, in said portion of said described land, and that said acts of said defendant, if permitted to be performed, would be wholly illegal, and would work great and irreparable damage to said plaintiff; that plaintiff has no adequate remedy at law. Plaintiff says that unless G. Wilson, as overseer as aforesaid, and all persons acting under and by virtue of authority derived from him, be enjoined, he and they will execute the said threat of defendant, and that the said lands of said plaintiff will be invaded and appropriated as aforesaid for the purposes aforesaid, greatly to the plaintiff's hurt."

"Wherefore, plaintiff prays that said G. Wilson, as overseer of roads of Haven township, Reno county, Kansas, and all persons acting under and by virtue of authority derived from him, be forever enjoined from entering upon the said lands of plaintiff hereinbefore described, for the purpose of laying out and opening a public highway across and over the lands aforesaid, as threatened by said defendant; and that a temporary injunction issue against said G. Wilson, defendant, as such overseer, as aforesaid, and all persons acting under and by virtue of authority derived from him, until the final hearing of this cause, and that on such final hearing such injunction be made perpetual and for costs, and such other and further relief as justice may require."

The answer of the defendant reads as follows:

"Comes now defendant, and for answer to the petition of plaintiff:

"1. Denies each and every allegation in said petition set forth, except as hereinafter specially admitted.

"2. Admits that he is a resident of Haven township, and road overseer of territory in which the lands in the plaintiff's petition described are situated; but denies that the plaintiff is the owner in fee of said premises, or has any title therein.

"3. Admits that as such road overseer he gave a notice to the occupant of said premises to open said road, and avers and says that said road is a regular and legally laid out highway in Reno county, Kansas, and has been such for more than seven years prior to the filing of plaintiff's petition in this cause, and has been traveled, used and worked as such highway; and that by the wrongful acts of plaintiff the said road was, prior to the giving of said notice, plowed up and obstructed by the plaintiff, and that therefore the said notice

was given to compel plaintiff to remove such obstructions and permit travel thereon as by law he is required to do.

"4. And for further answer, defendant says that at the time said road was laid out by the board of commissioners of Reno county, the said premises were the property of the Atchison, Topeka & Santa Fé railroad company; that there was at said time no occupant upon the said tracts of land; that the said railroad company was notified and aware of the laying out of the said road, and consented thereto; that any rights plaintiff has in the premises are by virtue of a contract with the said Atchison, Topeka & Santa Fé railroad company, and that he made such contract with the full knowledge that said road was laid out on said premises, and was allowed by the said railroad company to purchase said lands at a reduced price on account of the laying out of said road over the said premises; and whatever interest he has in the said premises he holds by virtue of his contract with said railroad company; and that therefore he is estopped from attempting to destroy said road and from the obstruction of travel thereon.

"5. The defendant further says, that said road was used, occupied and traveled for a period of more than seven years without objection from the owner of said premises, and that therefore said road has been established by prescription, and plaintiff is barred by the lapse of time from maintaining his said action.

"Whereupon, defendant prays judgment for his costs."

The plaintiff moved to strike out the fourth paragraph of the defendant's answer, and demurred to the fifth paragraph; which motion and demurrer were sustained by the court. A trial was then had before the court without a jury, and the court found the facts and the law of the case to be as follows:

"1. The court finds that there was a petition signed by twelve householders residing in the vicinity of the said road for the establishment of a road in Reno county from the south end of the Arkansas river bridge to the east line of Reno county between sections 12 and 13, in township 25, south, of range 4, west, which said petition was duly presented to the board of county commissioners of Reno county.

"2. That a bond for costs was given as required by law.

"3. That notice of the presentation of said petition was

given by notice published for two consecutive weeks in the *Hutchinson News*, a newspaper published in said Reno county, and also by posting notices, one upon the door of the county clerk's office, one on the end of the bridge across the river, and one in another point in the township, for the requisite time prior to the presentation of said petition; but that said written and printed notices misdescribed the direction of the road in this—that they called for a road running to the west line of the county, when in fact the road sought for run to the east line of the county, but further being described as being in township 25, range 4, west, between sections 12 and 13.

"4. That the said board of county commissioners appointed viewers in accordance with the said petition, and directed the county surveyor to make a survey of said road.

"5. That said viewers and surveyor duly reported, and the said road was duly established by said board of county commissioners of Reno county, Kansas, in July, 1873, and that two of said viewers were petitioners, and that these two made a favorable report, but the third reported adversely.

"6. That said report of said surveyor, and the road record of Reno county, show that said road was from the south end of the Arkansas river bridge at the city of Hutchinson, Reno county, Kansas, and runs thence in a southeasterly direction to the east line of Reno county between sections 12 and 13, in township 25, south, range 4, west, and the said road runs in a diagonal direction through the premises described in plaintiff's petition.

"7. That plaintiff purchased said premises of the Atchison, Topeka & Santa Fé railroad by contract in the fall of 1877.

"8. That no order was issued by the county commissioners of Reno county to the trustee of the township through which said road runs, to open the same.

"9. That Garrison Wilson gave written notice to the plaintiff, about August 1, 1880, to open said road on the surveyed line.

"10. That from the fall of 1872 there has been general travel across the premises described in plaintiff's petition, in the general direction of the surveyed route of said road; that said line was the main line of travel from the southeast to the city of Hutchinson, and has been a well-defined and extensively-traveled road; that the route of said travel is generally the same as the surveyed line, and follows the same

general course, and touches said surveyed line at several points, but deviates therefrom most of the distance across said plaintiff's premises from six to fifteen rods; that there is a pond upon the said premises, impassable in wet weather, and here the said line of travel deviates furthest from said surveyed line; that the road overseers of the several districts through which the said road runs have worked the same, and bridges have been erected thereon, and that one-half mile southeast from plaintiff's premises there is a bridge on the said road that cost $200, and other bridges thereon between said premises and the city of Hutchinson; that the road overseer in the district in which said premises are situated has caused work to be done on said road, and in 1879 he did work on the surveyed line through the premises of plaintiff hereinbefore mentioned, and the team of said plaintiff and the man in his employ worked thereon without the knowledge of plaintiff at the time the work was done, and worked out the taxes of the said plaintiff; that prior to the fall of 1877 the said premises were the property of the Atchison, Topeka & Santa Fé railroad company, and were up to said time unimproved and unbroken prairie land, and all plowing and improvements thereon have been made since the date of said purchase; that the said road is seventeen miles in length, and, except on premises of plaintiff, the route of travel was in general the same as the surveyed line; that A. H. Beagle was road overseer in 1879, and plowed across said premises, except about forty rods, to designate the line of said road, and failed to go further at the request of plaintiff not to plow through his cultivated land where oats were growing; that more than seven years had elapsed from the time of the making of the order of the board of county commissioners establishing said road to the time that defendant [plaintiff] received notice that said road would be opened through his premises; that none of the papers in the case bear any dates of filing in the county clerk's office, but that all of the papers, except the notices and proofs of publication and bond for costs, were found among the papers and records of the county clerk's office.

" That there are regularly established highways on two sides of the premises owned by plaintiff; that the traveled road through the premises of plaintiff, was a part of an old government road used in going from Wichita to Fort Zarah, and was so used prior to and at the time of the settlement of the county through which it now passes.

"That no attempt to open the surveyed road through the premises of plaintiff was ever made until August of 1880, at which time notice was given by the overseer that the road would be opened on the first day of January, 1881, unless opened sooner by plaintiff."

As conclusions of law, the court finds:

"1. That the plaintiff has sufficient title to the land to maintain this action.

"2. That the proceedings before the board, though irregular, were sufficient to give the board of county commissioners jurisdiction to make an order establishing the road in question.

"3. That the road not having been opened within seven years, it was by force of statute vacated over and upon the premises of plaintiff.

"4. That the public acquired no right to the surveyed road over the premises of plaintiff, by its travel over an old road running in the same general direction across the premises of plaintiff, but not touching generally the surveyed road.

"5. That plaintiff has not waived his right to recover in this action.

"6. That he is entitled to an injunction to restrain defendant from opening the road over his premises."

The court then rendered judgment upon its findings and conclusions perpetually enjoining the defendant, and all persons acting under him, and his successors, from opening the public road, above mentioned, across or over the plaintiff's lands. The defendant then moved the court for a new trial, upon the grounds that the decision of the court was contrary to law and the evidence, and that upon the findings of fact made by the court, the judgment should be for the defendant and not for the plaintiff; and that the court erred in its conclusions of law. This motion was overruled by the court, and the defendant then brought the case to this court, and asks that the judgment of the court below be reversed, and that judgment be entered in favor of the plaintiff in error, defendant below, and against the defendant in error, plaintiff below. The other facts of the case will be found stated in the opinion of the court.

*Houk, Brown & Zimmerman,* for plaintiff in error.

*H. Whiteside,* and *R. A. Campbell,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by L. C. Janes against Garrison Wilson, a road overseer in Haven township, Reno county, Kansas, to perpetually enjoin the defendant from opening a certain supposed public road across the plaintiff's lands. The case was tried by the court, without a jury, and the court granted the perpetual injunction prayed for; and the defendant, as plaintiff in error, brings the case to this court for review.

Two principal questions were presented to the court below, to wit: First, Was said public road ever legally established by the board of county commissioners? Second, And if it was so established, then was it so opened for public use as to prevent § 1 of chapter 150 of the Laws of 1879, (Comp. Laws of 1879, p. 817, ¶ 5075,) from so operating as to vacate and annul that portion of the road which is located across the plaintiff's premises? The first of these questions, the trial court decided in the affirmative, and the second in the negative: in other words, the trial court held that the road was legally established in July, 1873; but further held that it was never legally opened across the plaintiff's premises, and therefore, that said § 1 of chapter 150 of the Laws of 1879 so operated as to vacate and annul that portion of the road which was located over the plaintiff's land. It is the last portion of this decision of which the plaintiff in error (defendant below) now complains.

This is an equitable action; and as it is the plaintiff below, defendant in error, who invokes the aid of equity, we would naturally suppose, in the absence of proof to the contrary, that the plaintiff himself would not wish to see justice or equity defeated by the interposition of any unimportant technicalities or trivial irregularities, or of any other matters or

things which would not reach to the ultimate rights of the parties, or which would prevent a decision of the case upon its real merits. We would naturally suppose that the plaintiff himself, who is the party who seeks equity, would desire to have a full, fair and complete trial of the case upon all the facts and circumstances of the case. Indeed, whoever might interpose unimportant technicalities or trivial irregularities to prevent either the district court or the supreme court from giving to both parties a full, fair and complete hearing of the entire case, or from rendering a decision doing full and complete justice and equity in the case, we would certainly not think that it would be the plaintiff. Whoever invokes equity should be willing that full and complete equity should be done; and this after a full, thorough and careful consideration of all the facts and circumstances of the entire case; but whether willing or unwilling, equity will not allow itself to be hedged in or hampered by unimportant technicalities or defeated by trivial irregularities, nor will it allow parties to win cases by quirks and quibbles. On the contrary, equity will take into consideration everything necessary for the purpose of duly administering equity and justice, and in its investigations it will not be controlled by unimportant or immaterial matters, but will found its decisions upon the real essence and substance of things, and will finally render its judgment upon the real merits of the action. In the present case, before we proceed to the consideration of the merits of the case we must dispose of some preliminary matters.

The facts of the case, stated briefly, are substantially as follows: The plaintiff below filed his petition in the district court, praying for a perpetual injunction as above stated. The defendant answered, setting up various matters in defense. In the fourth and fifth paragraphs of the defendant's answer he stated, among other things, that the plaintiff's land was owned by the Atchison, Topeka & Santa Fé railroad company at the time when the public road in controversy was established across the same; and that the railroad company consented to the establishment of such road; and

16—29 KAS.

that the plaintiff, when he purchased the premises from the railroad company, obtained the same at a reduced price on account of the establishment of such road; and ,that the road has been used as a public road by the traveling public for a period of over seven years without any objection from the owner of the premises.     These paragraphs setting up these matters of defense the plaintiff objected to, and by motion and demurrer succeeded in having them stricken from the defendant's answer.     The case was then tried by the court, without a jury, and upon the pleadings and evidence the court announced what its decision would be; and the defendant then asked the court to make special findings of fact and of law, for the purpose that the same might be used in connection with the evidence in making a case for the supreme court.     The court announced that it would comply with the defendant's request; but that, as the term of the court was then about to close, and the court not having time to prepare such findings before the final adjournment, the judge would prepare the findings as soon as he could do so after the adjournment, and that both parties could present to him such findings as they desired and he would consider the same at his home at Newton, and would return such of them as he deemed proper, duly signed.     Counsel for both parties were present at the time and made no. objection, and it was believed by the court, and by the counsel for the defendant, that this was agreed to.     The judge of the court, in an affidavit made by him, states, among other things, that "this was not objected to by the counsel for the plaintiff, and was considered by the court as agreed to."     Special findings of fact and law were afterward prepared by the judge of the trial court, in accordance with this understanding, and were duly signed by him and handed to counsel for defendant.     This of course was all done by the judge at chambers, and after the adjournment *sine die* of the court.     Since that time the plaintiff and his counsel have persistently objected to the consideration of such findings, claiming that as they were not reduced to writing and signed by the judge before the final adjournment

of the court, but were in fact reduced to writing and signed by him afterward, they are mere nullities, and cannot be considered in any court as having any validity. The defendant's counsel, after receiving these findings and making a copy thereof, handed the original findings to the counsel for plaintiff, and the plaintiff's counsel have never returned them to the defendant's counsel or filed them in the office of the clerk of the district court, but retained them in their own possession, and they now object, and indeed have always objected, to any court taking any consideration of them; and this they do on the additional ground that they have never been filed in the office of the clerk of the district court. The defendant's counsel made a case in due time for the supreme court, and in such case incorporated copies of these findings. At the time that this case was presented to the judge of the district court for settlement, counsel for the plaintiff, as well as counsel for the defendant, appeared, and counsel for the plaintiff suggested as an amendment to the case-made that these findings be stricken therefrom, and objected to the incorporation of the findings in the case-made, and this upon the ground, among others, that the findings had not been reduced to writing during the term of the court; and the suggestion and objection were argued before the judge by counsel for both parties, and the judge refused to strike out these findings, and took further time for the settlement and signing of the case. Afterward, the judge settled and signed the case, and handed it to counsel for the defendant. The judge had, inadvertently, omitted one important fact from the findings, and also from the case-made. The counsel for the defendant presented the case to one of the counsel for the plaintiff, and asked him to consent to the insertion of such fact; but counsel for plaintiff stated that he would not consent to anything. Counsel for the defendant then stated that he would return the case to the judge of the district court, and have the case amended by the insertion of such fact. Afterward, the counsel for the defendant did return the case to the judge of the district court, and such fact was inserted in the case by such judge.

Counsel for plaintiff now move to dismiss the case from this court, on the ground that the case has been "materially altered" since it was first settled and signed by the judge of the district court. There were no other alterations or changes in the case-made than those above mentioned; and the counsel for defendant has filed in this court an affidavit of the judge of the district court stating among other things, that "the case-made and filed in the supreme court is the case-made as finally settled by the judge, and all changes made after its first signing were made by him." After the case was settled and signed, and amended by the judge of the district court as aforesaid, counsel for defendant filed their petition in error and case-made in the supreme court; and this they did before the case-made had been filed in the office of the clerk of the district court, and before any attestation had been made thereto or placed thereon by such clerk. Afterward counsel for the defendant withdrew the case temporarily from the supreme court, with leave of one of the justices thereof, and filed it in the district court, where it was properly attested and authenticated by the clerk of the district court; and then counsel returned the case with such attestation and authentication to the supreme court. Counsel for the plaintiff below, defendant in error, now move to dismiss the case because it was not filed with the clerk of the district court before it was filed in the supreme court, and because it was not duly attested and authenticated by the clerk of the district court before it was filed in the supreme court. Upon this point see the case of *Pierce v. Myers*, 28 Kas. 364. Counsel for plaintiff below, defendant in error, also move to dismiss the case from this court, on the ground that the case-made does not show that plaintiff's counsel were present at the time the case was settled and signed by the judge of the district court, or that they made any suggestion of amendments, or had any notice of the time fixed for the settling and signing of such case. The case was in fact presented to the judge of the district court at Newton, for the purpose of having it settled and

1. Supreme court; case not dismissed.

signed; and as shown by proper evidence outside of the case-made, counsel for both parties were present, and plaintiff's counsel suggested amendments and made objections as before stated, and argued the same before such judge. Upon this point see the case of *Russell v. Anthony*, 21 Kas. 450.

We shall now proceed to the consideration of the case upon its merits; but before doing so, we think it would be proper to state that the motions of the plaintiff below, defendant in error, to dismiss the petition in error and case-made from this court, will be overruled.

In overruling these motions, however, we do not wish to be understood as deciding anything further than is really necessary to be decided under the circumstances. We do not wish to be understood as deciding that a judge of the district court at chambers can make special findings after the court has adjourned, unless, as in this case, a demand for such special findings was made at or before the time when the court regularly and properly made its findings; and unless there was an apparent understanding at such time between the parties and the court that the judge might make such findings at chambers and in vacation. And we do not wish to be understood as deciding that a judge of the district court at chambers may change or alter a "case-made" for the supreme court after such "case-made" has passed away from his jurisdiction or control, or even after it has been filed in the office of the clerk of the district court for the clerk's attestation and authentication. We would suggest, however, that it is not

2. Case-made, contents of. necessary that a "case-made" should contain only such matters and things as are otherwise made a part of the record of the case. Such is not the practice. Usually a case-made contains many things which are never in any other manner made a part of the record of the case. We do not wish to state all the reasons that might be given for overruling the said motions, for many of them we think are so manifestly obvious that a statement of them is wholly unnecessary.

As before stated, there are two principal questions involved

in this case: First, was the road in controversy legally es-
tablished? Second, was it legally opened? The first of
these questions the court below answered in the affirmative,
2. Decision of ⎫ and the second in the negative, and all presump-
district court, ⎪
correctness ⎬ tions are in favor of the correctness of its deci-
of, when ⎪
presumed. ⎭ sion upon both these questions. Counsel for
defendant in error (plaintiff below) seem, however, to argue
the first question upon a different theory. We are not to
treat the decision of the court below upon either of these
questions as erroneous, unless the contrary is affirmatively
shown; but must in fact consider both of these decisions as
correct, unless the facts of the case clearly and affirmatively
show the reverse to be true. For instance, if the court be-
low has failed to state in detail and specifically all the facts
necessary to affirmatively show the validity of the establish-
ment of the road in question, we must not, as against the cor-
rectness of its decision, jump to the conclusion that the road
was not legally established; but, on the contrary, we should
presume that the facts not specifically found, would, if they
were stated in detail and specifically, show that the road was
duly and legally established. There is certainly nothing in
the present case that shows affirmatively that the road was
not legally established; and, indeed, we are inclined to think
that the facts found by the court below show affirmatively
and conclusively that the road was legally established; but,
as before stated, all presumptions are in favor of the correct-
ness of the decision of the court below, upon this as upon
other questions. The road was established by the board of
county commissioners of Reno county, in July, 1873, and
from *that time* forward, for at least seven years, the road has
been in legal contemplation "a public highway." (Gen. Stat.
of 1868, ch. 89, § 6; Comp. Laws of 1879, ch. 89, § 6.)

The second question above mentioned is the most impor-
tant question in the case; and upon this question, and this
alone, the court below rendered its final judgment in the case,
in favor of the plaintiff below and against the defendant
below. The court found that although the road in question

had been legally established, yet that it had never been legally opened, and therefore that it was vacated and annulled by virtue of the provisions of §1, chapter 150, Laws 1879, (Comp. Laws 1879, p. 817.) Of course all presumptions are in favor of the correctness of this decision, as well as of the other decisions of the court below; but if it should be found from the detailed statement of the facts of the case, as found by the court below, that this decision was merely a conclusion of law from the facts found by the court below, and that such conclusion is erroneous, then the decision of the court below should be reversed. Otherwise, the decision should be affirmed. The facts as found by the court below, with reference to this question, are as follows :

"*Tenth.* That from the fall of 1872 there has been general travel across the premises described in plaintiff's petition, in the general direction of the surveyed route of said road; that said line was the main line of travel from the southeast to the city of Hutchinson, and has been a well-defined and extensively-traveled road; that the route of said travel is generally the same as the surveyed line, and follows the same general course, and touches the said surveyed lines at several points, but deviates therefrom most of the distance across said plaintiff's premises from six to fifteen rods; that there is a pond upon the said premises, impassable in wet weather, and here the said line of travel deviates furthest from said surveyed line; that the road overseers of the several districts through which said road runs have worked the same, and bridges have been erected, and that one-half mile southeast from plaintiff's premises there is a bridge on the said road that cost $200, and other bridges thereon between said premises and the city of Hutchinson; that the road overseer in the district in which said premises are situated has caused work to be done on said road, and in 1879 he did work on the surveyed line through the premises of plaintiff hereinbefore mentioned, and the team of said plaintiff and the man in his employ worked thereon, without the knowledge of plaintiff, at the time the work was done, and worked out the taxes of the said plaintiff; that prior to the fall of 1877 the said premises were the property of the Atchison, Topeka & Santa Fé railroad company, and were up to said time unimproved and unbroken prairie land, and all plowing and improvements

thereon have been done since the date of said purchase; that the said road is 17 miles in length, and, except on the premises of plaintiff, the route of travel was in general the same as the surveyed line; that A. H. Beagle was road overseer in 1879, and plowed across said premises except about 40 rods, to designate the line of said road, and failed to go further at the request of plaintiff not to plow through his cultivated land where oats were growing; that more than seven years had elapsed from the time of the making of the order of the board of county commissioners establishing said road to the time that plaintiff received notice that said road would be opened through his premises; that none of the papers in the case bore any dates of filing in the county clerk's office, but that all of the papers, except the notices and proofs of publication and bond for costs, were found among the papers and records of the county clerk's office; that there are regularly established highways on two sides of the premises owned by plaintiff; that the traveled road through the premises of plaintiff was a part of an old government road used in going from Wichita to Fort Zarah, and was so used prior to and at the time of the settlement of the county through which it now passes; that no attempt to open the surveyed road through the premises of plaintiff was ever made until in August, 1880, at which time notice was given by the overseer that the road would be opened on the 1st day of January, 1881, unless opened sooner by plaintiff."

Perhaps it would here be proper to refer to the fact that the defendant set up in his answer that the railroad company had knowledge of the establishment of the road in question, and consented thereto, and afterward sold the land to the plaintiff at a reduced price because thereof, and that the plaintiff procured by motion and demurrer these matters to be stricken from the defendant's answer. Said § 1, ch. 150, Laws of 1879, provides, among other things, as follows:

"Section 1. That any county road, or part thereof, which has heretofore or may hereafter be authorized, which shall remain unopened for public use for the space of seven years at any one time after the order made, or the authority granted for opening the same, shall be, and the same is hereby vacated, and the authority granted for erecting the same is barred by lapse of time."

Was said road ever legally opened? and what must be

done in order that a public highway shall be considered as legally opened? The statutes in effect provide that the road overseers, in their respective districts, shall give notice to such owners of lands, or their agents or guardians, as reside in the county and have cultivated and inclosed lands through which the highway is established, to open the highway through their lands; and also provide that such road overseers, within their respective districts, shall remove all obstructions, and put the highway in such condition as to make it fit for public travel. And this is all that the statutes require in order to open a public highway. No notice is required to be given to persons who do not reside within the county, or to persons who do not possess or own cultivated or inclosed lands through which the highway is established; and it is not necessary that the highway should be actually traveled; all that is in fact necessary, is that it should be put in a condition for public travel. If it were naturally in such a condition, that would be sufficient, without any work from the road overseer. From June 20, 1872, up to April 25, 1874, the notice above mentioned was required to be in writing. (Laws of 1872, ch. 175, § 5.) But since April 25, 1874, up to the present time, it has not been necessary that the notice should be in writing. (Laws of 1874, ch. 108, §§ 12, 34; Comp. Laws of 1879, ch. 89, §§ 12, 34.) Hence, from the time the road in controversy was established in 1873, up to some time after the time when the plaintiff purchased his land from the railroad company, which was in 1877, no notice of any kind, written or oral, was required to be given either to the railroad company or to the plaintiff; for up to that time the land was vacant, unoccupied, uninclosed and uncultivated; and since that time, a verbal notice, and such notice as was in fact given to the plaintiff by the road overseer, Beagle, in 1879, was sufficient; and this last-mentioned notice was given within less than seven, and probably within less than six years after the road was established. As before stated, the road was established in July, 1873, and this notice was given by the road over-

4. Law and fact, stated; road, not unopened within meaning of statute.

seer, Beagle, while oats were growing on the land, in 1879. A public highway might also be opened, without anything being done by the road overseers for that purpose. The people themselves along the line of the road might open it: or the public travel might at once take possession of the road and use it. And whenever a public road is traveled, it is in fact opened, although nothing may have ever been done by the road overseers for the purpose of opening it. No formal opening is ever required. It is true, it may be formally opened by the several road overseers along the line of the road, but it may also be informally opened by themselves or by others; or it may be opened in fact by the public travel taking possession of it and using it. As before stated, no notice is ever required to be given where the land over which the road is established is vacant and unoccupied; and no work is ever required to be performed where no work is needed. A road may be opened without either notice or work: travel alone upon such a road would be a sufficient opening of the same. And certainly, whenever a road is in fact used as a public highway by the public, it cannot be considered as an "unopened" road within the meaning of §1, ch. 150, of the Laws of 1879. In the present case, the road was seventeen miles in length; it passed through several road districts; was worked and repaired by the several road overseers along the line of the road; and work was done even on the plaintiff's own premises. Bridges were built upon it, and a great amount of travel passed over the same; and there is nothing to show that the public at any time had the slightest intention of abandoning the road as a public highway. The court below in its findings states, among other things, "that the said road is seventeen miles in length, and, except on the premises of the plaintiff, the route of travel was in general the same as the surveyed line;" and the traveled road through the plaintiff's premises touches the surveyed line at several points, but deviates therefrom the most of the distance through the plaintiff's premises from six to fifteen rods. There was a certain pond on the plaintiff's

premises where the traveled road deviated the farthest from the surveyed line, but the road overseer in that district in less than seven years, and probably within less than six years from the time when the road was established, worked on the surveyed line where it passes through this pond. This it would seem was the only natural obstruction to travel on the plaintiff's premises, and this was an insuperable obstruction only in wet weather, and this was repaired by the road overseer in 1879. The road overseer, Beagle, also, in 1879, and probably within six years after the road was originally established, attempted to open the road on the surveyed line all the way through the plaintiff's premises; and he did so, except as to a distance of about forty rods, and refrained from opening the road this distance at the request of the plaintiff, who then, in 1879, had oats growing on the premises along the surveyed line for that distance. The road overseer evidently refrained from opening the road for this short distance of forty rods solely for the purpose of giving the plaintiff an opportunity to save his crops, and to open the road himself on or prior to the first day of the next January, (road law of 1874, § 12;) and it was the legal duty of the plaintiff to so open the road within that time, and he certainly cannot now claim that he has destroyed the road simply by procuring such leniency on the part of the road overseer, and then by failing to perform his legal duty in the premises.

Among other authorities we would cite the following cases as having some application to the present case: *Stickel v. Stoddard,* 28 Kas. 715; *Peck v. Clark,* 19 Ohio, 367; *Lessee &c. v. Mehrenfeld,* 8 Ohio St. 440; *McClelland v. Miller,* 28 Ohio St. 488; *The State v. McGee,* 40 Iowa, 595; *The State v. K. C. St. J. & C. B. Rld. Co.,* 45 Iowa, 139.

We think the road in the present case was legally opened. The judgment of the court below will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.