Stickel v. Stoddard, *as Trustee.*

---

MARY F. STICKEL, *et al.,* v. H. L. STODDARD, *as Trustee of Eureka Township,* *et al.*

PUBLIC HIGHWAY, *Not Vacated by Non-use of Part of.* A public county road was duly located and established by the board of county commissioners, over uncultivated and unimproved lands. This road was used by the public as a highway for several years, and up to the commencement of this action. The entire road was so used, except a distance of about three-fourths of a mile, where certain ravines crossed the road, and to a certain extent prevented the public travel from following the line of the road. At this point the public passed around the places where the ravines crossed the road, and away from the road from eighty feet to 100 yards, and then returned to the road again. A small portion of the travel, however, passed along the line of the road, but not enough to make a well-defined and beaten wagon-track. This was the condition of the road for nearly ten years. *Held,* That the failure of the public to use the road at the point where said ravines crossed the same does not have the effect, under § 1, ch. 150, of the Laws of 1879, (Comp. Laws of 1879, p. 817, ¶ 5075,) to vacate or annul any portion of the road.

*Error from Greenwood District Court.*

ACTION brought by *Mary F. Stickel* and *John Culler,* to perpetually enjoin the defendants, the road overseer, the township trustee and the board of county commissioners, from re-

Stickel v. Goddard, *as Trustee.*

moving the plaintiff's fence, and opening what the defendants claim to be a public highway across the plaintiff's land. The case was tried by the court below without a jury, and the court made special findings of fact and conclusions of law, as follows:

### FINDINGS OF FACT:

"1. At the time of the beginning of the said action, the defendant H. L. Stoddard was the legally elected, qualified and acting trustee of Eureka township, Greenwood county, Kansas; and the defendant Philip Phillips was the legally elected, qualified and acting road overseer of road district No. 4, in said Eureka township; and G. W. Springer, Samuel Brookover and Samuel Holmes were the legally elected, qualified and acting members of the board of county commissioners for said county.

"2. In 1871, and previous thereto, F. B. Stickel, the husband of the plaintiff Mary F. Stickel, was the owner of the S. W. ¼ of sec. 34, T. 25, R. 10, E., in said county. In 1874 said plaintiff and her said husband conveyed said premises to one Joseph Stickel, who in 1876 conveyed the same to the plaintiff Mary F. Stickel, who ever since has been and now is the owner thereof.

"3. At the July session of 1871 of the said board of county commissioners, the said board, upon the petition of John McPeck and others, legally and properly, and in full compliance with the law then existing, located and established, by its order duly and properly made, a county road as follows: Commencing at the quarter-section corner on the north line of section 16, T. 25, R. 10, in said county, and running thence south one mile; thence east on the section line to the southeast corner of said section; thence south on the section line to the southeast corner of section 33, in said township and range; said road to be sixty feet wide. And afterward, on the 6th day of July, 1871, said board, by its order duly and legally made, ordered the trustee of Eureka township aforesaid to cause said road to be opened for public use and travel.

"4. At the time of the establishment and location of the road by the board of county commissioners as aforesaid, the entire line of said road was over open, unoccupied and uninclosed lands, and the same remained so open and unoccupied and unimproved continuously afterward, until the spring of 1881.

"5. In 1879, the west half of said road, for a distance of eighty rods north of the southwest corner of the said lands of the plaintiff Mary F. Stickel, was fenced up by one Brock, the owner of the lands adjoining, which fence has ever since remained there, though ordered to move the same by road overseer.

"6. The remaining portion of the west half of said road, where it touches the said land of the said plaintiff Mary F. Stickel, was fenced up by one Rolly, in 1879, who removed the same by order of the road overseer before the commencement of this action.

"7. In the spring of 1881, the plaintiff fenced up the said road after being notified by the road overseer not to do so, and said road overseer threw it down. Plaintiff rebuilt it, and began this action to restrain said overseer from throwing said fence down again, and to have said road declared vacated by lapse of time. At the time this suit was begun, defendants were threatening to take down plaintiff's said fence, and, but for said suit, would have done so.

"8. Except where said road touches the said plaintiff's land, the entire line thereof is open and unobstructed and unoccupied, and has been ever since its location.

"9. The plaintiff John Culler was, during the year 1881, in possession of the said S.W.¼ of section 34, as the tenant of the plaintiff Mary F. Stickel. Said land was inclosed with a fence, and a portion of said quarter-section was under cultivation, which portion of said land was rented to said Culler for said year 1881, and said Culler was to pay said plaintiff the one-half of the corn raised thereon that year as rent therefor.

"10. About three-fourths of a mile of said road north from the southwest corner of sec. 34 is crossed by several deep ravines, which make general travel over such portion of said road impossible, though there has been some local and occasional travel thereon. This condition has existed ever since it was first established. Since the location of said road, this portion thereof has been traveled occasionally between said ravines, but not enough to make a well-defined and beaten wagon-track. The general travel in that direction has been on a track leading around said ravines, and varying from said road from 80 feet to 100 yards. Said ravines have never been improved, and no attempt has ever been made to construct crossings over the same, or to work or improve any part of

Stickel v. Stoddard, *as Trustee.*

said portion of said road. Excepting said ravines, said road would be a fairly good natural road.

"11. The plaintiff Mary F. Stickel has never received any damages on account of the location of said road, nor been tendered any, and never consented to the location thereof."

CONCLUSION OF LAW.

"1. The plaintiffs are not entitled to the perpetual injunction prayed for."

Upon these findings of fact and this conclusion of law, the court below rendered judgment in favor of the defendants and against the plaintiffs for costs, and refused the injunction. The plaintiffs bring the case to this court for review.

*Peyton, Sanders & Peyton,* for plaintiffs in error.

*Z. Harlan,* and *I. P. Nye,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This action was brought by Mary F. Stickel and John Culler, to perpetually enjoin the defendants, the road overseer, the township trustee, and the board of county commissioners, from removing the plaintiffs' fence, and opening what the defendants claim to be a public highway across the plaintiffs' land. It is admitted by the parties that in July, 1871, this highway was duly and legally located and established as a public county road by the board of county commissioners of Greenwood county, and that the county board duly ordered that it be opened for public use and travel. A portion of said highway was established along the section line running south from the southeast corner of section 16, township 25, range 10, to the southeast corner of section 33, and the southwest corner of section 34, in said township and range. The plaintiffs' land is situated immediately east of this section line, and is the southwest quarter of said section 34. The land over which this road was located was unoccupied, and there was nothing to prevent the public from traveling over any portion of it, except certain ravines, which partially prevented travel on the line of the road where it crossed the plaintiffs' land and for about one-

fourth of a mile north of the plaintiffs' land. The road continued to be in this condition until the year 1879, when the owners of the land immediately west of the plaintiffs' land fenced their land, and thereby fenced the west half of that portion of the road which was situated on the west side of the plaintiffs' land; and afterward, and in the spring of 1881, the plaintiffs fenced their land so as to fence up the east half of the road, situated on their land. The road overseer then threw down the plaintiffs' fence, and the plaintiffs then rebuilt the same, and then commenced this action to perpetually enjoin the road overseer, together with the township trustee and the board of county commissioners, from again entering upon their premises or disturbing the same, and to obtain a decree declaring the road vacated and annulled. Just how much travel there was upon this road does not appear. From anything appearing in the case there may have been a great deal, except at the point where the ravines crossed the road and thereby interfered with the travel. At that point but little travel followed the exact line of the road as located and established by the board of county commissioners, but the principal portion of the travel passed around the places where these ravines crossed the road, leaving the road from eighty feet to one hundred yards, and again returning to the road. Some travel, however, actually passed along and over the road where the road crossed these ravines; but as found by the court below, there was not enough of such travel "to make a well-defined and beaten wagon-track." It does not appear that any work or labor has ever been done or performed in improving this road; and it does not appear what, if anything, the road overseer has done in opening the same. Now from the fact that the public travel generally did not pass over the road where the same crossed these ravines, the plaintiffs claim that the road has been vacated, abrogated and annulled by virtue of § 1, ch. 150, of the Laws of 1879. (Comp. Laws of 1879, p. 817, ¶ 5075.) This section reads as follows:

"SECTION 1. That any county road or part thereof which

has heretofore or may hereafter be authorized, which shall remain unopened for public use for the space of seven years at any one time after the order made or the authority granted for opening the same, shall be and the same is hereby vacated, and the authority granted for erecting the same is barred by lapse of time; and any state road or part thereof which has heretofore and may hereafter be authorized, which shall remain unopened for public use for the space of ten years after the passage of the act authorizing the same, shall be vacated, and the authority for opening it repealed for non-use."

Now we certainly do not think that the fact that but little travel has ever passed over or along the road where the same crosses these ravines, will, by virtue of said §1, ch. 150, of the Laws of 1879, wholly vacate or destroy the road, or any part or portion thereof. The legislature certainly did not mean that the provisions of said section 1 should cover just such cases as this. With reference to the opening of public roads or highways, §12 of the road law provides as follows:

"Sec. 12. It shall be the duty of each and every road overseer to open, or cause to be opened, all county and state roads and highways which have been or may hereafter be laid out or established through any part of the district assigned to such overseer, first giving notice to the owner or owners, or their agent or agents, if residing in the county; or if such owner be a minor, idiot, or insane person, then to the guardian of such person, if a resident of the county, through whose inclosed or cultivated lands such road is laid out or established, notifying such owners aforesaid to open said road through their lands within ninety days after service of such notice; and if the person or persons so notified do not open such road within the time named in such notice, it shall be lawful for such overseer, or any person under his direction, to enter upon said lands and open said road," etc. (Comp. Laws of 1879, p. 811.)

From this section it appears that when a public road is established, it is the duty of the road overseer to open the same; and in doing so he will give notice to all persons through whose inclosed and cultivated lands the road is located. If, in passing along the road, he finds that the road passes over only such lands as are uncultivated, uninclosed and unimproved,

as is the case in the present case, his entire duties in opening the road are performed, except, perhaps, in making some improvements on the road where improvements are necessary. Now everything was certainly done in the present case for the purpose of opening the road in question that was necessary to be done, except the filling-up of said ravines or building bridges or culverts over them. Except for said ravines, as found by the court below, the road was a fairly good natural road; and it was used and traveled by the public. In the present case it would seem that there was more than one ravine; but suppose there had been only one; and that that crossed the road in the open and uninclosed prairie; and that a few feet east or west of the road was a good natural crossing over such ravine; and that for seven years the public travel had passed over this crossing, and not on the exact line of the road: would this vacate or annul the entire length of the road? Or would it vacate or annul that small portion of the road, (few feet only,) which was not used by the public? Or would it really have no effect upon the existence of the road, or of any portion thereof? We would certainly think that it would not have any effect upon the existence of the road, or any portion thereof—and certainly not the effect to destroy the same. Now the case supposed is precisely the case that we now have under consideration, except that there were more ravines than one, and except that the travel passed outside of the road from eighty feet to 100 yards, instead of only a few feet, and except that there was about three-quarters of a mile of the road that was not generally and uniformly traveled by the public, instead of only a few feet; but the principle covering the supposed case and the one now under consideration is the same. We suppose that the public found fair crossing, in the present case, over the ravines by simply passing outside of the road from eighty feet to 100 yards; and that the whole country in that vicinity was vacant and unoccupied, and that the land over which the travel passed was wholly unobstructed by any improvements. We would think that said § 1 of the statute was intended to apply only

to cases where it would seem, from the acts and omissions of the public, that the public intended to wholly abandon the use of the road, and not to cases where the travel merely passed out of the road for the temporary purpose of avoiding an obstruction. Where the public travel passes out of a road merely for the purpose of avoiding an obstruction, it does not show any intention on the part of the public to wholly abandon the use of the road, or even of that portion of it which the public for the time being fails to use; but it merely shows an intention on the part of each individual using the road not to use the same at that particular point at that particular time. Undoubtedly, many of the public roads of this state are in the same condition as the one now in question. Many of them pass over uncultivated prairie land, and many of them have places where, for short distances, they are not used; and probably some of such places have not been used for years.

We perceive no error in the ruling and judgment of the court below, and therefore the judgment will be affirmed.

All the Justices concurring.