THE CITY OF TOPEKA V. B. D. RUSSAM.

STATE ROAD, Not "Unopened;" Part, Not Vacated by Non-Use. Whenever a state road is located and established, and everything else is done which either the law or necessity requires to be done in order to render the road open for public use, the road is not then an "unopened" road, within the meaning of chapter 150 of the Laws of 1879; and the fact that after the road had been established for ten years the public travel then, and for another ten years, passed out of the established road for a distance in order to avoid a ditch, and then returned again to the road, will not vacate that portion of the road not traveled.

*Error from Shawnee District Court.*

ACTION brought by *B. D. Russam* against the *City of Topeka*, for the recovery of certain real estate and for damages. On the final trial, which was by the court without a jury, the court made the following findings and conclusions, to wit:

"1. That under an act of the territorial legislature, approved February 9, 1859, the Quindaro and Salina territorial road was ordered; that commissioners were appointed and proceeded to make a survey, planting stones and going over the route; that these commissioners lodged in the office of the secretary of state what purports to be a map of the road, and over the land in controversy, but when the same was so lodged there is unknown, as the same bears no filing; that the commissioners procured from James R. Greer, then owner of the land in controversy, a right over it, which was not acknowledged by him or signed by his wife, for a road ordered under an act of the legislature, approved February 9, 1859, which was lodged in the office of the county clerk of Shawnee county.

" 2. That this road, so far as it relates to the land in controversy, was never ordered open by any tribunal or other authority, nor has the same been worked or ordered to be worked by any tribunal or authority whatever.

"3. That the road over the land in question has never been opened or traveled or laid out, and the only travel or road over the land in question has been such as is casually made over unimproved and vacant land by travelers of their own motion and for their own convenience.

"4. That for more than ten years prior to the commencement of this suit the road over the land in question had never been opened or traveled.

"5. That the premises in dispute lie within the county of Shawnee and state of Kansas, but no evidence was offered showing that the same are within the limits of the city of Topeka.

"6. That the defendant took possession of the land in controversy, and, by its officers, for a city street, cut down trees, dug up the soil, and damaged the premises to the extent of $150 thereby.

"7. The premises described in the petition of the plaintiff filed herein were originally owned by one James R. Greer, who received a patent from the United States for the entire quarter-section, of which said premises described in plaintiff's petition are a part. Said described premises were conveyed by said James R. Greer, and the same, after passing through several intermediate grantors, were conveyed to the Atchison, Topeka & Santa Fé railroad company, which held title to the same by and through a regular chain of conveyances duly and properly executed. On the 31st day of May, 1878, said Atchison, Topeka & Santa Fé railroad company conveyed said premises described in the petition to the said plaintiff in fee simple, by deed of general warranty, and from the date of the last said conveyance the said plaintiff, with his family, lived upon and occupied said disputed premises until the same were converted into a roadway as hereinafter stated.

"8. In the spring and summer of 1859, under and by virtue of an act of the legislature of the then territory of Kansas, the commissioners appointed by said act duly laid out, located and established, in accordance with the provisions of said act, a certain territorial road, named in said act as a certain territorial road 'from Quindaro to Salina, by way of Lawrence and Topeka.' Said territorial road, as located and laid out, was wholly within the then territory of Kansas, and ran from

Quindaro, by way of Lawrence and Topeka, to Salina, all said places named being within the then territory of Kansas. Said territorial road, as located, established and laid out by said commissioners, was eighty feet in width, and was so located, established and laid out over and along the premises in dispute in this action, the center line of said road running along the north line of section 5, in township 12, south, of range 16, east of the 6th P. M., in Shawnee county, state of Kansas.

"9. The aforesaid James R. Greer was the owner of said premises, at the time said territorial road was located, established and laid out as aforesaid; and at the time said road was so located, established and laid out as aforesaid, and on the 30th day of June, 1859, the said James R. Greer, in accordance with and as provided by said act of the legislature establishing said road, made, executed and delivered to said Shawnee county, and to said commissioners for said Shawnee county, a certain written agreement, signed by the said James R. Greer and by said commissioners, reciting that said territorial road had been laid out as aforesaid, over and along the aforesaid premises and section line, and in accordance with and by virtue of said act of the legislature and by said commissioners; and in consideration of the location of said territorial road on said land, releasing the right-of-way for said territorial road over, along and upon the premises herein in dispute, and further releasing all claim to damages by reason of the laying out and opening of said road; which said release was duly filed in the office of the county clerk of said county, and is now on file among the records and files of said office. Said James R. Greer, at the time he executed said release, was a married man, and occupied said quarter-section of land as a homestead, and his wife did not join with him in executing said release.

"10. Said commissioners appointed by said act of the legislature to lay out and locate said road, for the purpose and with the view of establishing, laying out and locating said road did, in the spring and summer of 1859, pass over the line of said road, make all necessary surveys, selected the line, route and places over, along and where said road should run, and marked the line and route of said road by planting stones in the middle thereof, as provided by said act, and secured the right-of-way for said road, as stated in the previous finding, in accordance with said act, and in the manner aforesaid located, established and laid out said road over, along

and upon the premises in dispute, as well as the remainder of said road. The only report shown to have been made by said commissioners to the secretary of the then territory of Kansas, (except the aforesaid release of right-of-way,) is a map or chart of said road showing the length of said road in miles, and the counties, townships, sections and quarter-section lines through which it passes, signed by said commissioners, and also the field-notes of the survey of said line. Said map and field-notes are not marked filed, but are now among the files and records, in the office of the secretary of the state of Kansas; and said map, chart and field-notes show the line along which said road was laid out was over the north line of said section 5, and that the same was laid out over and along the premises in dispute.

"11. It has for more than twenty-five years last past been a matter of public and general notoriety within the city of Topeka, Kansas, that the aforesaid road was located and laid out over, along and upon the premises in dispute.

"12. No formal order was ever made or notice given for the opening of said road over and upon said disputed premises by the road overseer of the district in which said disputed premises are located, but the premises through which said road was located as aforesaid along said north line of said section 5 were open, uninclosed, unimproved prairie land.

"13. Immediately upon the location and establishment of said road as aforesaid, portions of it and most of the same began to be traveled by the public for and as a public highway; and from the time said road was laid out and located as aforesaid up to the year 1869, portions of said road were continually used and traveled by the general public for and as a public road and highway, and said portions of said road were during all said time actually traveled over, along and upon the premises in dispute; the road as a whole being so traveled, but the traveled way at certain places deflecting from the line over which said road was laid out, and there were no obstructions to prevent travel over the premises in dispute, but the only travel at any time over that portion of the road over the premises in dispute was as mentioned in the finding hereinbefore made.

"14. About the year 1866, a bridge was built by Shawnee county, Kansas, on the line of said road as laid out and located as aforesaid, across Shunganunga creek, at a point a short distance from said disputed premises.

"15. In the year 1869, by the construction of a railroad

across said premises and across said road over said premises, a ditch was made across said road that could not be crossed by the traveling public, by reason whereof the travel deflected from the old traveled way before reaching the premises in dispute, and going around said premises again went into the old channel of travel. From said year 1869 to 1880, there was no travel over the premises in dispute, but during all said time said road was used and traveled by the public as a public highway; the traveled way a short distance before reaching said disputed premises turning out to avoid said ditch, and going a short distance north of the old traveled way to the point where it again entered the old traveled way, and thus going around said disputed premises.

"16. From the point where said travel deflected from the old traveled way to the point where it again entered said old traveled way, the line of travel during the time it was turned out of the established road went over, along and upon lands over which the public never had or acquired any right-of-way whatever, but went over lands belonging to private individuals and without their consent, and so continued to trespass on said lands until the travel was again turned back into the old traveled way as hereinafter stated.

"17. After said travel had deflected from the old traveled way as aforesaid, said premises were inclosed with a fence, said fence being erected along the north line of said section 5 the length of said premises and inclosing said premises.

"18. On the — day of September, 1880, one Joel Huntoon, who was then city engineer of the defendant, went upon said disputed premises and opened up a street over and along the same and over and along where said territorial road had been laid out and located and traveled as aforesaid, doing the necessary grading and removing whatever trees or other thing it was necessary to remove in order to put said premises in proper and suitable condition for travel by the public, and said street was so opened to run into the traveled way at the point it had deflected therefrom as aforesaid, and when said street was so opened up, travel was turned into it, and the traveled way which had been made around said premises by reason of the ditch as aforesaid was no longer used by the traveling public, but travel was again turned into the old traveled way, and the said street as thus opened has ever since been used and traveled by the public as a public highway and thoroughfare as a street of the city of Topeka.

"19. A few days prior to the time said grading was done

and said street opened up for travel as aforesaid, said plaintiff at the request of said Huntoon removed his fence from said north line of section 5 and from the premises over which it was proposed to open said street, and took up some of the trees standing on said premises, and did not at the time said grading was done and said street opened, or for about three weeks thereafter, object to the opening of said street; but after said street had been so opened up and had been used and traveled by the public as a street for about three weeks, said plaintiff placed a fence along the middle of said street as opened and along the north line of said section 5; and soon thereafter said Huntoon removed said fence for the purpose of rendering it passable and convenient to travel along and over said street as thus opened up, and doing no unnecessary damage in so removing said fence.

"20. The said defendant has never had or been in the actual possession of said premises, and has never had any possession thereof except such possession as cities of the first class in this state are by law presumed to have of streets, alleys and public highways within their corporate limits; but said disputed premises, since the street was opened over the same as aforesaid, have been used and traveled by the public generally as a public street and highway, and have been used for no other purpose whatsoever, and have never since so opened as a street been in the actual possession of any person or persons whomsoever, except as hereinbefore stated.

"21. The damage to the plaintiff, by reason of the trespass committed on said premises as aforesaid, is assessed by the court at the sum of $150.

"And as conclusions of law the court finds :

"1. For the plaintiff.

"2. That the plaintiff is entitled to recover possession of the premises in controversy.

"3. That the plaintiff is entitled to recover damages to the amount of $150.

"4. That under and by virtue of an act entitled 'An act relating to state and county roads,' approved March 12, 1879, said state road over the premises became vacated."

The other facts will be found in the opinion of the court.

*J. D. McFarland,* for plaintiff in error.

*J. G. Waters,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by B. D. Russam against the city of Topeka, for the recovery of certain real property and for damages. The damages prayed for were for the unlawful detention of the property and for certain alleged trespasses. The defendant answered to the plaintiff's petition by filing a general denial; and upon the pleadings a trial was had before the court, without a jury, which trial resulted in a judgment for the defendant. Thereupon the plaintiff demanded another trial, by virtue of § 599 of the civil code. The plaintiff's demand was granted, and the defendant excepted. Subsequently the defendant filed an amended answer, denying that it had committed any trespass upon said premises, denying that it then or ever had unlawfully withheld possession of the premises from the plaintiff, alleging that a portion of the premises, to wit, forty feet in width across the north side, was a public road, and that if the plaintiff had any interest therein it was subject to the right of the public to use and travel the same as a public highway; and as to the residue of the premises, the defendant, in its answer, disclaimed all right or interest. A reply, which was substantially a general denial, was filed to this answer. At the April term, 1882, of the court, the action again came on for trial before the court, a jury being waived. After the testimony had been introduced and the case taken under advisement by the court, and during the same term of court, the defendant made application to have the case opened and for leave to introduce further testimony. This application was taken under advisement by the court. No further proceedings were had in the action until the January term, 1883, of said court, at which term the case was again called. The defendant thereupon demanded that the case be tried without regard to the former proceedings, but the court, over the objection of the defendant, proceeded with the case, beginning where it had left off at the April term. The motion for leave to open the case and introduce further testimony

was overruled. The court stated in writing its conclusions of fact found and its conclusions of law separately. A motion for a new trial was made and overruled, and judgment given for the plaintiff for possession of all the premises described in his petition, and for $150 damages, and costs of suit.

The defendant, the city of Topeka, now brings the case to this court, and asks for a reversal of said judgment. The testimony introduced on the trial is not brought to this court, and hence the findings of the trial court must be regarded as correct statements of the facts of this case. The facts, stated briefly, are substantially as follows : In 1859, in pursuance of chapter 111 of the Laws of 1859, a territorial road was located and established from Quindaro to Salina, by the way of Lawrence and Topeka. A small portion of said road — a few rods in length — ran over the premises now in dispute, and the owner of the premises released to the public the right-of-way over the same, in accordance with the provisions of said chapter 111. No formal order opening the road was ever made, nor any order other than the passage of the statute authorizing the location and establishment of the road, and the location and establishment of the road in pursuance of the statute. It was the general understanding of the people and a matter of public notoriety within the city of Topeka from 1859 up to the present time, that the said road was located and established over the premises in dispute. In addition to the foregoing, it should also be stated that, up to 1869, the premises over which that portion of the road now in dispute was located, was open, uninclosed, unimproved prairie land, with no obstruction or hindrance to prevent travel from passing over the same; and it remained in that condition up to 1880, except that a single ditch was dug by a railroad company across the established road. Immediately upon the establishment of this road the public commenced to travel thereon, and to use the same as a public highway. The line of travel, however, did not always conform to the exact line of the road as laid out, but up to 1869 there was some actual travel over

the established line of that portion of the road now in dispute. The road as a whole has been continuously used and traveled as a public highway ever since it was first established in 1859, and the travel has followed the established line of the road, except in a few places and for short distances. In 1869 a railroad company, while constructing its railroad upon and near the premises in dispute, dug a ditch across that portion of the road now in controversy, and by this means the public travel was forced to go around this portion of the road to find a suitable crossing; and from 1869 up to 1880 there was no actual travel over this portion of the road, the travel leaving the road a short distance before reaching this portion of it and going around the ditch, and then returning into the established road after passing the ditch. The travel during this time went over lands over which the public had no right-of-way. In 1880 that portion of the road now in dispute was again prepared for travel, and it has ever since been used by the public as a public highway.

Upon these facts the court below found in favor of the plaintiff and against the defendant, as before stated; and it made this finding upon the authority of that portion of chapter 150 of the Laws of 1879 which reads as follows:

"Any state road or part thereof, which has heretofore or may hereafter be authorized, which shall remain unopened for public use for the space of ten years after the passage of the act authorizing the same, shall be vacated, and the authority for opening it be repealed for non-use."

Was this decision of the court below correct, or was it erroneous? It would seem to us that it was erroneous. There can be no question that said road was legally located and established in 1859, and there can scarcely be any question that it was also *opened* for public travel at the time. The road was generally traveled, and there was nothing to prevent its being traveled over the premises now in dispute; and even on these premises there was some travel, and the bulk of the travel on these premises left the established line of the road only for a short distance. There was no law at

that time requiring that the road should be formally opened,. and there was no law or necessity requiring that anything should be done for the purpose of opening the road for travel that was not done. Indeed, the road *was* virtually opened. It was located and established in full compliance with the law; and there was nothing to prevent the public from traveling over it. It was not *closed* or *inclosed*. It was not *shut up*. It was not *obstructed*. And if the road was not closed or inclosed or shut up or obstructed, it must have been opened;. and a road that is open cannot well be an unopened road. The road in the present case remained open for ten years after its location and establishment before the railroad company dug the ditch above mentioned; and we would hardly think. that it could even then be called an "unopened" road, within. the meaning of ch. 150 of the Laws of 1879. (*Stickel v. Stoddard*, 28 Kas. 715; *Wilson v. Janes*, 29 Kas. 233, 251, and cases there cited.) Our statute upon this subject is taken substantially from a similar statute in Ohio; and in Ohio it. was decided, in 1850, in the case of *Peck v. Clark*, 19 Ohio,. 367, that the statute applied *only* to roads that had been authorized but *never* opened. See also *Champlin v. Morgan*, 20. Ill. 181. In the case of *Stickel v. Stoddard*, 28 Kas. 721,. 722, it is said:

"We would think that said section 1 of the statute was intended to apply only to cases where it would seem, from the acts and omissions of the public, that the public intended to wholly abandon the use of the road, and not to cases where the travel merely passed out of the road for the temporary purpose of avoiding an obstruction."

Besides, the statute relied upon provides that —

"No state road, or part thereof, which has heretofore or may hereafter be *authorized*, which shall *remain unopened* for public use for the space of ten years *after the passage of the act authorizing the same*, shall be vacated, and the *authority for opening it* repealed for non-use."

Now the road in the present case was not only "*authorized*," but it was also *located* and *established*, and it did not "*remain unopened*" for public use for the space of ten years "*after the*

_passage of the act authorizing the same;_" but it in fact _re-mained open_ for public use for the space of ten years after the passage of the act authorizing the same; for during the whole of that period of time the established road over the premises in controversy was _open, uninclosed_ and _unobstructed_ prairie, and there was nothing to prevent the traveling public from passing over it; and if the road was once _opened_, what would be the effect of afterward repealing "the authority for opening it"? Indeed, it would seem that this whole provision of the statute with reference to state roads, applies, as was decided in Ohio, only to roads that have _never been opened_. It must also be remembered, that in this case the owner of the premises gave to the public the right-of-way over the premises, in accordance with said chapter 111 of the Laws of 1859.

But it is said by counsel for the defendant in error that this could not have been so, for the reason that the instrument giving such right-of-way was executed by the owner of the premises alone, without the consent of his wife, and that the property was his homestead. Now in answer to this, it may be said: (1) That the owner of the premises held 160 acres, while in 1859 only 80 acres were exempt; (2) the exemption was by statute only, and could be repealed or modified by statute; (3) that the statute providing how the right-of-way might be given and the statute providing for a homestead exemption were enacted by the same legislature and on the same day, and both acts must be construed together, and both held to have force and operation, whenever such can be the case. It is our opinion that the court below erred in holding that that portion of the road which passes over the plaintiff's land was vacated by virtue of the provisions of chapter 150 of the Laws of 1879. It is our opinion that whenever a state road is located and established, and everything else is done which either the law or necessity requires to be done in order to render the road open for public use, the road is not then an " unopened" road, within the meaning of chapter 150 of the Laws of 1879; and the fact that after the road has been established for ten years the

public then, and for another ten years, passes out of the established road for a short distance, and then returns again to the road, will not vacate that portion of the road not traveled.

There are several other questions raised by the plaintiff in error, and several matters assigned for error which we have not yet considered; but as we have considered the case upon its merits, and decided it upon its merits, we think it is wholly unnecessary to consider the other questions. No decision that we might make upon the other questions would affect the decision which we have already made upon the merits of the case.

The judgment of the court below will be reversed, and the cause remanded with the order that judgment be rendered in favor of the defendant and against the plaintiff for costs.

All the Justices concurring.