No. 23,273.

ELMER RULE and SARAH RULE, *Appellants,* v. U. L. THOMPSON, as Clerk, ALBERT HADA, as Treasurer, and J. W. ANGELL, as Trustee, of Eagle Township in Barber County, *Appellees.*

### SYLLABUS BY THE COURT.

1. HIGHWAY—*When Not Vacated or Abandoned by Nonuse—Statute Repealed.* The provisions of the statute (now repealed) that a road should be vacated if permitted to remain unopened to public use for seven years at a time cannot effect the vacation of a road through the existence of an obstacle to travel constructed only three years before its repeal.

2. SAME—*Not Vacated by Nonuse of Part Thereof.* Where a highway is laid out running north and then east, and the last quarter of a mile before reaching the turn is so intercepted by ravines that it cannot well be traveled until improved, the fact that travelers avoid all the obstacles in one detour and strike the east road at an angle does not amount to an abandonment of any part of the road as established.

Appeal from Barber district court; GEORGE L. HAY, judge. Opinion filed February 11, 1922. Affirmed.

*Samuel Griffin,* of Medicine Lodge, for the appellants.

*Riley W. MacGregor,* county attorney, *A. L. Orr,* and *Seward I. Field,* both of Medicine Lodge, for the appellees.

The opinion of the court was delivered by

MASON, J.: Elmer Rule owns section 7 in one township and the north half of the northeast quarter of section 13 adjoining it on the west. In 1891 a public road was laid out by the county commissioners on the west and north lines of section 7 for their full length, extending also further to the east and south. No work, however, was ever done upon the quarter of a mile running south from the northwest corner of section 7 until a few years ago when the township officers undertook to put it in condition for travel. Rule sought an injunction against them on the ground that this portion of the road had been vacated by the failure to open it for seven years. He was denied relief, and appeals.

1. If the plaintiff is entitled to an injunction it is by reason of the following statute, which was enacted in 1879 (ch. 150, § 1) and repealed in 1911 (ch. 248, § 55):

"That any county road or part thereof which has heretofore or may hereafter be authorized, which shall remain unopened for public use for the space of seven years at any one time after the order made or the authority granted for opening the same, shall be and the same is hereby vacated, and the authority granted for erecting the same is barred by lapse of time; and any state road or part thereof which has heretofore or may hereafter be authorized, which shall remain unopened for public use for the space of ten years after the passage of the act authorizing the same, shall be vacated, and the authority for opening it repealed for nonuse." (Gen. Stat. 1909, § 7312.)

The plaintiff contends that the evidence conclusively shows that when the road was laid out an east and west fence at the south end of the portion in dispute presented a barrier to travel, the removal of which was necessary to the opening of the road for public use, and that this condition existed for more than seven years. The existence of such a fence at some time appears to have been established. An old resident testifying for the plaintiff, the trial being in 1920, said: "When I first went there there wasn't any fences, they began to build fences about ten or twelve years ago." This would fix the date of the construction of the fence not earlier than 1908. As the statute was repealed in 1911 it is manifest that the

road cannot have become vacated by virtue of the existence of this fence. That there may have been evidence of an earlier construction is not now important inasmuch as no special findings were made and the trial court must be deemed to have resolved all controversies of fact against the plaintiff.

2. It remains to consider the effect of a lack of any general use of this portion of the road as established. One of the road viewers who laid out the road testified: "There was some travel from the schoolhouse [near the south end of the disputed strip] north, . . . but I do not recall of any travel going across those canyons, that is straight north. After you left the schoolhouse the travel went north and west part of it, and I think one went straight north around those canyons." There was evidence that the canyons referred to made the route as laid out impracticable until improvements should be made, and as a result a part of the travel at least was diverted to the northeast. If vehicles had been driven around each of the ravines, returning to the laid-out line as soon as the lay of the land reasonably permitted, no part of the road would have been annulled. (*Stickel v. Stoddard, as Trustee,* 28 Kan. 715.) The fact that the frequency of the rough places made it advisable to drive around all of them at once—to cut the corner and strike the east-bound road on the section line—does not appear to us to change the principle. In the case just cited the following language was used, much of which is obviously applicable here:

"When a public road is established, it is the duty of the road overseer to open the same; and in doing so he will give notice to all persons through whose inclosed and cultivated lands the road is located. If, in passing along the road, he finds that the road passes over only such lands as are uncultivated, uninclosed, and unimproved, as is the case in the present case, his entire duties in opening the road are performed, except, perhaps, in making some improvements on the road where improvements are necessary. Now, everything was certainly done in the present case for the purpose of opening the road in question that was necessary to be done, except the filling-up of said ravines, or building bridges or culverts over them. Except for said ravines, as found by the court below, the road was a fairly good natural road, and it was used and traveled by the public. In the present case, it would seem that there was more than one ravine. But suppose there had been only one, and that that crossed the road in the open and uninclosed prairie, and that a few feet east or west of the road was a good natural crossing over such ravine, and that for seven years the public travel had passed over this crossing, and not on the exact line of the road, would this vacate or annul the entire length of the road? or would it vacate or annul that small portion of the road (few feet only) which was not used by the public? or would it

really have no effect upon the existence of the road, or of any portion thereof? We would certainly think that it would not have any effect upon the existence of the road, or any portion thereof—and certainly not the effect to destroy the same. Now, the case supposed is precisely the case that we now have under consideration, except that there were more ravines than one; and except that the travel passed outside of the road from eighty feet to 100 yards, instead of only a few feet; and except that there was about three-quarters of a mile of the road that was not generally and uniformly traveled by the public, instead of only a few feet; but the principle covering the supposed case and the one now under consideration is the same. We suppose that the public found fair crossing, in the present case, over the ravines by simply passing outside of the road from eighty feet to 100 yards; and that the whole country in that vicinity was vacant and unoccupied, and that the land over which the travel passed was wholly unobstructed by any improvements. We would think that said section 1 of the statute was intended to apply only to cases where it would seem, from the acts and omissions of the public, that the public intended to wholly abandon the use of the road, and not to cases where the travel merely passed out of the road for the temporary purpose of avoiding an obstruction. Where the public travel passes out of a road merely for the purpose of avoiding an obstruction, it does not show any intention on the part of the public to wholly abandon the use of the road, or even of that portion of it which the public for the time being fails to use; but it merely shows an intention on the part of each individual using the road not to use the same at that particular point at that particular time. Undoubtedly, many of the public roads of this state are in the same condition as the one now in question. Many of them pass over uncultivated prairie land, and many of them have places where for short distances they are not used, and probably some of such places have not been used for years." (pp. 720-722.)

The judgment is affirmed.